**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY<br>P.O. Box 145496<br>Cincinnati, Ohio 45250-5496<br><br>    Plaintiff,<br><br>v.<br><br>CODE 3 SECURITY & PROTECTION SERVICES, INC.<br>3273 Pine Orchard Lane, Suite D<br>Ellicott City, Maryland 21042<br><br>    Serve:  VAHID MEMIC, Registered Agent<br>           635 Edgewood Street, NE<br>           Washington, DC  20018<br><br>MONIQUE NICHOLS, as mother and<br>next best friend of J.S.<br>1330 Caraway Court, Unit #400<br>Largo, Maryland 20774<br><br>    Serve:  1330 Caraway Court, Unit #400<br>           Largo, MD  20774<br><br>MM PROPERTY, LLC<br>3811 Jay Street Northeast<br>Washington, D.C. 20019<br><br>    Serve:  CT Corporation Commission,<br>           Registered Agent<br>           1015 15th Street, NW, Suite 1000<br>           Washington, DC  20005<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No.: _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Cincinnati Specialty Underwriters Insurance Company ("Cincinnati"), by counsel, hereby files this Complaint seeking a declaration of rights and obligations, and states as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 2201 and 1332.

2.     This Court has personal jurisdiction over each of the Defendants because the events giving rise to this lawsuit occurred in the District of Columbia.

3.     Venue is proper pursuant to 28 U.S.C. § 1391.

4.     The amount in controversy exceeds $75,000.

5.     Pursuant to 28 U.S.C. § 2201, Cincinnati seeks a declaration of the parties' rights and obligations under the liability insurance contracts at issue in this proceeding.

## PARTIES

6.     Plaintiff Cincinnati is an insurance company incorporated under the laws of Ohio and has its principal place of business in Ohio.

7.     Defendant Code 3 Security & Protection Services, Inc. ("Code 3") is incorporated under the laws of Maryland and has its principal place business in Maryland.

8.     Upon information and belief, Defendant Monique Nichols ("Nichols") is a citizen of Maryland.

9.     Upon information and belief, Defendant MM Property, LLC ("MM") is a District of Columbia limited liability company with its principal place of business in the District of Columbia.

## FACTS

10.     This declaratory judgment action arises from a tort lawsuit filed by Nichols, as mother and next best friend of J.S., which is captioned *Nichols, as mother and next best friend of J.S. v. MM Property, LLC, et al.*, Civil Action No. 15-0002608 and pending in the Superior Court for the District of Columbia (the "Underlying Lawsuit").  A true and correct copy of the Complaint filed in the Underlying Lawsuit is attached hereto as Exhibit 1.

11.     In the Underlying Lawsuit, which speaks for itself, Nichols alleges that on, October 3, 2014, a gunfight broke out at the Mayfair Mansions Apartment Complex ("Mayfair") involving two unidentified parties, and that J.S. was struck by a stray bullet as a result of the gunfight while playing on a playground at Mayfair.

12.     On or about April 14, 2015, Nichols filed the Underlying Lawsuit against Code 3, MM, Mayfair Mansions Limited Partnership ("MMLP"), Edgewood Management Company ("Edgewood") and Code 3 (collectively, the "Underlying Defendants").

13.     Nichols alleges that Defendant MM is the fee simple owner of a parcel of land that partially contains the playground where the shooting injury occurred and that MM also owns other portions of the Mayfair complex.

14.     Nichols also alleges that MMLP is the fee simple owner of a parcel of land that partially contains the playground where the shooting injury occurred and that MMLP also owns other portions of the Mayfair complex.

15.     Nichols alleges that Edgewood is the property manager at Mayfair.

16.     Code 3 entered into a basic security services agreement with MM to provide certain services at Mayfair (the "Security Contract").

17.     In the Underlying Lawsuit, Nichols asserts a single claim for negligence against the Underlying Defendants, alleging that the Underlying Defendants owed duties to take

reasonable precautions and security measures as were necessary to protect tenants and licensees from foreseeable criminal acts at Mayfair, and that the Underlying Defendants breached those duties by, among other things:

- Failing to provide adequate security for tenants and licensees at Mayfair;

- Failing to have an adequate number of security guards at Mayfair;

- Failing to have competent security guards at Mayfair;

- Failing to properly train security personnel;

- Failing to have a sufficient number of security personnel at Mayfair;

- Failing to secure the perimeter at Mayfair; and

- Failing to remove trespassers from Mayfair.

Ex. 1, ¶ 37.

18.     Nichols seeks damages against the Underlying Defendants, jointly and severally, in the amount of $50 million.

19.     Cincinnati issued insurance policy number CSU0046569 to Code 3 for the period from May 18, 2014 through May 18, 2015 (the "Primary Policy").  A true and correct copy of the Primary Policy is attached hereto as Exhibit 2.

20.     The Primary Policy affords each occurrence limits of $1 million and aggregate limits of $2 million.  The Primary Policy also contains a Deductible Liability Insurance endorsement, which establishes a $5,000 per claim deductible for "bodily injury" or "property damage" claims.  The Primary Policy uses basic form CG 00 01 04 13, which provides, in pertinent part, as follows:

**SECTION 1 – COVERAGES**

**COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply.   We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

    *     *     *

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period . . ..

    *     *     *

2.     **Exclusions**

This insurance does not apply to:

a.  **Expected or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    *     *     *

5

**SECTION V – DEFINITIONS**

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Ex. 2, Policy Form CG 00 01 12 07.

21.    The Primary Policy also contains an Exclusion – Assault Or Battery endorsement

(the "Assault or Battery Endorsement"), which provides, in pertinent part, as follows:

**A.**  The following exclusion is added to Paragraph **2. Exclusions** of **Section 1 – Coverage A – Bodily Injury and Property Damage Liability,** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability**:

**Assault or Battery**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**(1)** An actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, their employees, patrons or any other person;

**(2)** The failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery; or

**(3)** The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery; or

**(4)** The failure to render or secure medical treatment or care necessitated by any assault or battery; or

**(5)** The negligent:

**(a)** Employment;

6

**(b)** Investigation or reporting or failure to report any assault or battery to proper authorities;

**(c)** Supervision;

**(d)** Training;

**(e)** Retention

Of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph **a.** above.

\* \* \*

**C.** Exclusion **2.a.** of the Commercial General Liability Coverage Form is deleted in its entirety and replaced with the following:

**2.a.   Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

Ex. 2, Policy Form CSIA405 (08/09)-B.

22.     The Primary Policy also contains a Security Agency Errors Or Omissions

Endorsement, which provides, in pertinent part, as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.** The following is added to Paragraph 1. **Insuring Agreement** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**f.**  We will pay on behalf of the insured those sums which the insured shall become legally obligated to pay as damages because of "bodily injury" or "property damage" resulting from the negligent acts, errors or omissions of the insured and arising out of the security operations of the insured to which this insurance applies, committed in the "coverage territory" during the policy period.

**B.** The following is added to Paragraph 1. **Insuring Agreement** of **Section I – Coverage B – Personal and Advertising Injury Liability:**

    **c.** We will pay on behalf of the insured those sums which the insured shall become legally obligated to pay as damages because of "personal and advertising injury" resulting from the negligent acts, errors or omissions of the insured and arising out of the security operations of the insured to which this insurance applies, committed in the "coverage territory" during the policy period. . . .

Ex. 2, Policy Form CSIA405 (08/09)-A.

23.     The Primary Policy also contains an additional insured endorsement (the "Additional Insured Endorsement"), which extends additional insured coverage to others when Code 3 has agreed in a contract to add such party as an additional insured.  Ex. 2, Policy Form CSGA 437 11 08.  The coverage afforded to the additional insured is subject to the terms of the Additional Insured Endorsement and the Primary Policy.

24.     Cincinnati also issued Excess Policy number CSU0046573 to Code 3 for the period from May 18, 2014 through May 18, 2015 (the "Excess Policy").  A true and correct copy of the Excess Policy is attached hereto as Exhibit 3.

25.     The Excess Policy affords limits of $4 million each occurrence and in the aggregate.  The Excess Policy uses basic form CSCX 100 02 13, which provides, in pertinent part, as follows:

> The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance" unless otherwise directed by this insurance.

*   *   *

**SECTION I – COVERAGE**

**1.  Insuring Agreement**

    **a.** We will pay on behalf of the insured, except as stated in this Coverage Part, those sums in excess of the "retained limit" any insured becomes legally obligated to pay as damages to which this insurance provided under this Coverage Part applies.

*   *   *

    **c.** This insurance applies to damages that are subject to an applicable "retained limit".  If any other limit, such as a sublimit, is specified in "controlling underlying insurance", this insurance does not apply to damages arising out of that exposure unless the limit is specified in the Declarations under the Schedule of "controlling underlying insurance".

*   *   *

**2.  Exclusions**

The following exclusions, and any other exclusions added by endorsement, apply to this Coverage Part.  The exclusions applicable to any "controlling underlying insurance" apply to this insurance unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this Coverage Part.

*   *   *

**SECTION IV – DEFINITIONS**

*   *   *

**1.** "Controlling underlying insurance" means any policy of insurance or self-insurance listed as such in our Schedule of Controlling Underlying Insurance.

*   *   *

**4.** "Loss" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

    **a.** Settlements, judgments, binding arbitration; or

    **b.** Other binding alternative dispute resolution proceedings entered into with our consent. . . .

9

**5.** "Retained limit" means the available limits of "controlling underlying insurance" applicable to the claim.

Ex. 3, Policy Form CSCX 100 02 13.

26.     The Schedule of Controlling Underlying Insurance identifies the Primary Policy.

Ex. 3, Policy Form CSCX 400 06 09.

27.     By letter dated May 18, 2015, the insurer for MM tendered the Underlying

Lawsuit on behalf MM to Code 3 for defense and indemnification pursuant to the

indemnification provision set forth in the Security Contract.

28.     In the same May 18, 2015 letter, the insurer for MM tendered the matter on behalf

of MM to CSU, pursuant to the terms of the Security Contract, seeking defense and indemnity

coverage for MM as an additional insured under the Cincinnati coverage issued to Code 3.

29.     By letter dated July 16, 2015, Cincinnati agreed to assume the defense of Code 3

in the Underlying Lawsuit pursuant to a full and complete reservation of rights.

30.     By letter dated November 13, 2015, Cincinnati rejected the additional insured

tender asserted on behalf of MM pursuant to the terms of the Security Contract.

## CLAIM FOR DECLARATORY RELIEF

31.     Cincinnati realleges and incorporates herein by reference the allegations set forth

in paragraphs 1 through 30 above.

32.     Cincinnati owes no duty to defend or indemnify either Code 3, as the named

insured, or MM, as an additional insured, for the claims and allegations asserted in the

Underlying Lawsuit.

33.     The terms and provisions of the Assault or Battery Endorsement set forth in the

Primary Policy exclude coverage for the claims and allegations asserted in the Underlying

Lawsuit against Code 3 and MM, including but not limited to any claims based upon an alleged

to failure prevent or suppress an assault or battery or the alleged failure to provide an environment safe from assault or battery.

34.     The terms and provisions of the Assault or Battery Endorsement set forth in the Primary Policy are incorporated into the Excess Policy such that the claims and allegations asserted in the Underlying Lawsuit against Code 3 and MM are excluded from coverage under the Excess Policy.

35.     An actual controversy exists as to the existence and scope of liability insurance coverage afforded under the Primary and Excess Policies for the claims and allegations asserted against Code 3 and MM in the Underlying Lawsuit.

36.     Cincinnati is entitled to a declaration that coverage is barred under the Primary and Excess Policies for the claims and allegations asserted against Code 3 and MM in the Underlying Lawsuit such that Cincinnati owes no duty to defend or indemnify either Code 3 or MM under the Policies.

WHEREFORE, Plaintiff Cincinnati Specialty Underwriters Insurance Company, respectfully prays for the following relief:

a.     That this Court declare that Cincinnati Specialty Underwriters Insurance Company owes no duty to defend either Code 3 or MM in connection with the Underlying Lawsuit.

b.     That this Court declare that Cincinnati Specialty Underwriters Insurance Company owes no duty to indemnify either Code 3 or MM in connection with the Underlying Lawsuit.

c.      That this Court grant such other relief as may be warranted, just, necessary

and proper under the circumstances.

Dated:  November 19, 2015                          Respectfully submitted,


                                                          /s/
                                                   Thomas S. Garrett
                                                   D.C. Bar No. 462930
                                                   Attorney  for  Cincinnati  Specialty  Underwriters
                                                   Insurance Company
                                                   Harman, Claytor, Corrigan & Wellman
                                                   P.O. Box 70280
                                                   Richmond, Virginia 23255
                                                   (804) 747-5200
                                                   (804) 747-6085 – facsimile
                                                   tgarrett@hccw.com