UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Case No. 15-2028 (RJL) |
| CODE 3 SECURITY & PROTECTION SERVICES, INC. | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**
(August 9, 2017) [# 50]

Plaintiff, the Cincinnati Specialty Underwriters Insurance Company ("CSU" or "plaintiff"), brings this action seeking declaratory relief against Code 3 Security & Protection Services, Inc. ("Code 3" or "defendant"), MM Property, LLC ("MM"), Monique Nichols ("Nichols"), and E&G Property Services, Inc. ("E&G"). Specifically, CSU seeks an order from this Court declaring that CSU owes no duty to defend or indemnify Code 3 for the claims asserted against it in a tort suit that is being adjudicated in D.C. Superior Court. This matter is now before this Court on plaintiff's Motion for Summary Judgment [Dkt. # 50]. Upon consideration of the parties' submissions, plaintiff's motion is GRANTED and defendant's counterclaims are DISMISSED. Accordingly, it is DECLARED that CSU owes no duty under the primary and excess policies issued to Code 3 to indemnify, or to defend, Code 3 in the D.C. Superior Court lawsuit.

1

## BACKGROUND

This declaratory judgment action arises from a tort lawsuit ("underlying lawsuit") filed in D.C. Superior Court. Am. Compl. at ¶ 11. In that underlying lawsuit, which is still pending, Nichols alleges that, on October 3, 2014, there was a gunfight at the Mayfair Mansions Apartment Complex ("Mayfair Complex") between two unidentified parties. Pl.'s Mem. in Support of Its Mot. for Summ. J. ("Pl.'s Mem."), Ex. 3 at ¶¶ 25-26. The Mayfair Complex includes Mayfair Mansions I—which is owned by Mayfair Mansions Limited Partnership ("MMLP") and managed by Edgewood Management Company ("Edgewood")—and Mayfair Mansions III—which is owned by MM and managed by E&G. *Id.* at ¶¶ 4-5, 6, 8. Together, these properties include common areas, such as a playground and seven vehicular gates used to access the Mayfair Complex. *Id.* at ¶¶ 12-13. Nichols alleges that on the night of the shooting, an unidentified male, who was not a tenant, drove or walked through an unmanned security gate, and a gunfight broke out shortly thereafter. *Id.* at ¶ 26. Nichols's nine-year-old son, J.S., was playing on a playground at the Mayfair Complex when the gunfight broke out, and he was struck by a stray bullet and sustained injuries. *Id.* at ¶ 26.

Prior to the gunfight, Code 3 had entered into a security services agreement ("Security Contract") with MM that, among other things, required Code 3 to provide certain protection services at Mayfair Mansions III. Pl.'s Mem., Ex. 5. As part of the security contract, Code 3 was obligated to defend and indemnify MM and E&G for claims falling within the scope of the indemnity provision. *Id.* at 4, Art. VI. The contract also required Code 3 to obtain general liability insurance, and to name MM as an

2

additional insured under the insurance contract. *Id.* at 4-5, Art. VII. Code 3 did not enter into such an agreement with MMLP or Edgewood to provide services at Mayfair Mansions I.

In the wake of her son's shooting, Nichols filed the underlying lawsuit—Civil Action No. 15-0002608—in D.C. Superior Court against Code 3, MM, MMLP, and Edgewood on April 14, 2015. *See* Pl.'s Mem., Ex. 1. The following month, Nichols amended her complaint to add E&G as an additional defendant. *See* Pl.'s Mem., Ex. 2. In that Superior Court action, Nichols asserts a single claim for negligence against all defendants, alleging that they "had a duty to the tenants, guests, and licensees, including J.S., to take reasonable precautions and security measures as were reasonably necessary to protect their tenants, guests, and licensees from the foreseeable criminal acts of third parties." *See* Pl.'s Mem., Ex. 3 at ¶ 28. Nichols alleges that the defendants breached this duty by, among other things, failing to provide adequate security, failing to have competent security guards, failing to properly train security personnel, failing to have an adequate number of security guards at the Mayfair Complex, failing to secure the perimeter at the Mayfair Complex, and failing to remove trespassers from the Mayfair Complex. *Id.* at ¶¶ 28-40. Nichols seeks damages against the defendants in the amount of $50 million. *Id.* at ¶¶ 41-42.

At the time of J.S.'s shooting, Code 3 was insured by CSU, under a policy ("Primary Policy") running from May 18, 2014 through May 18, 2015. *See* Pl.'s Mem. at 6. The Primary Policy—number CSU0046569—provides coverage for bodily injury and property damage, but contains an exclusion for assault or battery. *See* Pl.'s Mem., Exs.

3

7-8.  CSU also issued an excess policy ("Excess Policy") to Code 3 for the period running from May 18, 2014 through May 18, 2015.  Pl.'s Mem., Ex. 11.  The Excess Policy—number CSU0046573—provides that coverage is subject to the same exclusions and limitations contained in the Primary Policy, unless otherwise stated.  Pl.'s Mem., Ex. 11.  The Assault or Battery Exclusion states, in relevant part:

> This insurance does not apply to "bodily injury," property damage" or "personal and advertising injury" arising out of:
>
> 1. An actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, their employees, patrons or any other person;
> 2. The failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery; or
> 3. The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery; or
> 4. The failure to render or secure medical treatment or care necessitated by any assault or battery; or
> 5. The negligent:
>    a. Employment;
>    b. Investigation or reporting or failure to report any assault or battery to proper authorities;
>    c. Supervision;
>    d. Training;
>    e. Retention
>
> Of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by the **Assault & Battery** exclusion above.
>
> Pl.'s Mem., Ex. 8, Policy Form CSIA405 (08/09)-B.

On May 18, 2015, MM's insurer sought defense and indemnification on behalf of MM and E&G from Code 3, pursuant to the indemnification provision in their security contract. Pl.'s Mem., Ex. 14. That same day, MM's insurer sought defense and indemnity coverage for MM from CSU, pursuant to the security contract, as an additional insured under the coverage CSU issued to Code 3. *Id.* On July 16, 2015, CSU agreed to defend Code 3 in the underlying lawsuit pursuant to a full reservation of its rights. *See* Pl.'s Mem., Ex. 15, at 7. Four months later, CSU rejected MM's request for defense and indemnity coverage as an additional insured under the security contract. Pl.'s Mem., Ex. 16. On November 19, 2015, CSU filed this action seeking a declaratory judgment that it had no obligation to defend and indemnify Code 3 and MM for the claims and allegations asserted in the underlying lawsuit.[1] *See* Compl., Docket No. 1. Code 3 filed two counterclaims, alleging that CSU breached its insurance contract and violated Maryland's First Party Bad Faith Statute, Md. Code Ann. Cts. & Jud. Proc. § 3-1701. *See* Def. Code 3 Sec. & Protection Servs., Inc.'s Answer & Counterclaims in Resp. to Pl.'s Am. Compl. for Declaratory J. ("Def.'s Answer") at 9-11.[2]

---

[1] Although CSU initially named as defendants Code 3, MM, Nichols, and E&G, Am. Compl. at ¶¶ 7-10, plaintiff moved for default judgment against MM, Nichols, and E&G on the ground that these defendants had not filed responsive pleadings, and the deadline for doing so had passed. *See* Pl.'s Mot. for Entry of Default J, Docket No. 46. By order dated March 20, 2017, this Court granted CSU's request that a default judgment be entered against MM Property. Mem. Order, Docket No. 57. The Court accordingly ordered that "CSU Insurance Co. owes no duty under the Primary and Excess policies issued to Code 3 . . . to indemnify or to defend MM Property in the underlying lawsuit." *Id.* at 3. The Court further declared that MM Property, Nichols, and E&G "have waived their right to defend against a declaratory judgment as to Code 3 in this lawsuit. Whatever interest those defendants may have in the coverage that CSU Insurance Co. owes to Code 3 will not be grounds to later challenge the scope of that coverage" *Id.* Accordingly, the only remaining defendant in this case is Code 3.

[2] Code 3 also asserted third party claims of negligence against CSU Producer Resources, Inc.—the insurance broker on Code 3's Primary and Excess policies with CSU—and Bay Area Insurance Group, LLC—the insurance agent who obtained the policies from CSU on Code 3's behalf. Def. Code 3 Security

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, "[s]ummary judgment is appropriate when the pleadings and the record demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Santos v. DEA*, 357 F. Supp. 2d 33, 35-36 (D.D.C. 2004). The moving party bears the initial burden of identifying evidence that demonstrates that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant makes that showing, the burden shifts to the nonmoving party to "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). This Court reviews the evidence "in the light most favorable to the party opposing summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 (1986). Here, unless defendant can demonstrate a genuine issue of material fact—which requires Code 3 to "cast more than metaphysical doubt" on the evidence CSU has presented—CSU is entitled to judgment as a matter of law. *Doe v. Gates*, 981 F.2d 1316, 1323 (D.C. Cir. 1993).

---

& Protection Servs., Inc.'s Third Party Compl. Against Insurance Broker & Producer/Agent at ¶¶ 1-3. On June 13, 2016, these third party defendants moved to stay the third-party action pending the resolution of the underlying declaratory judgment action on the ground that "[l]itigating the third-party action at this time will require fact-intensive discovery and will unnecessarily complicate resolution of the Declaratory Judgment Action—which can likely be resolved as a matter of law based on interpretation of the relevant insurance policies." Mot. by Third-Party Defs. CSU Producer Resources, Inc. & Bay Area Insurance Grp., LLC to Stay Third-Party Action, Docket No. 31 at ¶ 5. By minute order dated November 8, 2016, I granted the motion to stay pending resolution of the declaratory judgment dispute. *See* Minute Order, November 8, 2016.

# ANALYSIS

## I. Choice of Law

Before reaching the merits of this dispute, I must first decide which jurisdiction's law I must apply: the District of Columbia or Maryland. The first step in a choice of law analysis is "to determine whether a true conflict exists—that is, whether more than one jurisdiction has a potential interest in having its law applied and, if so, whether the law of the competing jurisdictions is different." *GEICO v. Fetisoff*, 958 F.2d 1137, 1141 (D.C. Cir. 1992) (internal quotation marks omitted). Here, the potentially interested jurisdictions are Maryland and the District of Columbia. But our Circuit has noted that, when it comes to insurance coverage disputes, there is no conflict between the two jurisdictions. "The law in each of these jurisdictions is the same with respect to the interpretation of insurance contracts—in all three, the plain meaning of the policy language controls, and any ambiguities are resolved in favor of the insured." *Id.* (determining that there is no conflict among Virginia, Maryland, and D.C. law regarding the interpretation of insurance contracts).

And the same is true regarding Maryland's and D.C.'s law on the duty to defend. Both jurisdictions determine an insurer's duty to defend based solely on the allegations asserted in the underlying complaint and the terms of the insurance contract, and both jurisdictions hold that, if there is no duty to defend, there is no duty to indemnify as a matter of law. *Compare Penn-Am. Ins. Co. v. Lewis*, 539 F. Supp. 2d 250, 253 (D. Md. 2005), and *First Financial Ins. Co v. GLM, Inc.*, 88 F. Supp. 2d 425, 430 (D. Md. 2000), with *Levelle, Inc. v. Scottsdale Ins. Co.*, 539 F. Supp. 2d 373, 377 (D.D.C. 2008), and

7

*L.J.G., Inc. v. Penn-Am. Ins. Co.*, 803 A.2d 430, 433 n.1 (D.C. 2002). Thus, there is no true conflict, and I apply the law of the District of Columbia by default. *See Fowler v. A&A Co.*, 262 A.2d 344, 348 (D.C. 1970).

## II. The Merits

CSU argues that, because the allegations contained in the underlying lawsuit, and the terms of the Assault or Battery Exclusion, are both clear and unambiguous, the plain language of the policy bars coverage. Pl.'s Mem. at 16. I agree. "District of Columbia courts follow the so-called 'eight-corners rule' with respect to insurance coverage disputes." *Levelle*, 539 F. Supp. 2d at 377. Under that approach, "an insurer's duty to defend is determined by comparing the complaint . . . with the policy. If the facts alleged in the complaint . . . would give rise to liability under the policy if proven, the insurer must defend the insured." *Stevens v. United General Title Ins. Co.*, 801 A.2d 61, 66 n.4 (D.C. 2002). Unfortunately for defendant, the allegations contained in Nichols's complaint in the underlying lawsuit, and the terms of the Assault or Battery Exclusion, are both clear and unambiguous.

The crux of Nichols' allegations in Superior Court is that J.S. was shot in the head during an unexpected gunfight at the Mayfair Complex. Pl.'s Mem., Ex. 3 at ¶ 26. Specifically, she alleges that "[d]espite the extensive history of criminal activity on the grounds of Mayfair Mansions, the Defendants failed to take proper measures to provide for appropriate and reasonable security and management on the premises." *Id.* at ¶ 31. And she further charges that Code 3 breached its duty "by failing to warn, protect, guard, and secure the safety of Plaintiff's son J.S." *Id.* at ¶ 37. The Assault or Battery

8

Exclusion provides, *inter alia*, that there is no coverage for any bodily injury arising from "[t]he failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery." Pl.'s Mem., Ex. 8. Comparing the plain language of the exclusion to the allegations set forth in the underlying complaint, it is clear that the claims Nichols asserts fall squarely within the terms of the policy's exclusion. Indeed, the weight of authority supports enforcement of the plain language of assault or battery exclusions to bar coverage under similar circumstances. *See, e.g., Essex Ins. Co. v. Night & Day Mgmt., LLC*, 536 F. Supp. 2d 53, 57-58 (D.D.C. 2008) (assault and battery exclusion in general liability policy barred coverage where nightclub patron was assaulted by insured's employee); *Stiglich v. Tracks, D.C., Inc.*, 721 F. Supp. 1386, 1388 (D.D.C. 1989) (policy's assault and battery exclusion precluded coverage of claim where dance club was sued for negligent failure to prevent or stop assault by a patron of the club). As such, plaintiff has no duty to defend or indemnify defendant in the underlying lawsuit.

Defendant attempts to salvage its case by contending that, even if the plain language of the Assault or Battery Exclusion would apply to bar coverage, the Security Agency Errors or Omissions Endorsement ("E&O Endorsement") set forth in the Primary Policy contradicts the Assault or Battery Exclusion and renders the E&O Endorsement illusory. I disagree. The E&O Endorsement reads, in relevant part: "We will pay on behalf of the insured those sums which the insured shall become legally obligated to pay as damages because of 'bodily injury' or 'property damage' resulting from the negligent

9

acts, errors or omissions of the insured and arising out of the security operations of the insured to which this insurance applies, committed in the 'coverage territory' during the policy period." Pl.'s Mem., Ex. 9, Policy Form CSIA405 (08/09)-A. Simply put, these two provisions of the policy do not conflict.

It is clear from the language of the policy that the E&O Endorsement applies broadly to provide coverage for damages arising out of negligence. Critically, however, the E&O Endorsement is subject to the same exclusions—including the Assault and Battery Exclusion—as the rest of the policy. Putting it another way, the Assault or Battery Exclusion limits the scope of the E&O coverage to the extent that the injury or damage was caused by assault or battery. And this is the same reading courts have given to virtually identical contractual provisions in similar circumstances. *See Capitol Indem., Inc. v. Brown*, 581 S.E.2d 339, 343 (Ga. Ct. App. 2003) ("[T]he assault or battery exclusion does not render the E&O endorsement worthless or effectively preclude all coverage for nearly any conceivable event. . . . The exclusion relates to a finite class of claims involving assault or battery. . . . [T]he range of professional liability claims that might be brought against a security firm certainly extends beyond this class."); *see also First Mercury Ins. Co. v. Sudderth*, 620 Fed. App'x 826, 830 (11th Cir. 2015). As such, there is no ambiguity created by giving full application and effect to both contractual provisions. Defendant's assertion that the Assault or Battery Exclusion nullifies—or otherwise renders illusory—the E&O Endorsement accordingly is of no avail.

Finally, Code 3 argues that, even if the plain language of the policy demonstrates that CSU has no duty to defend or indemnify it, Code 3 had a reasonable expectation of

10

coverage for claims arising out of an assault or battery because of its status as a "security agency operations intended to prevent assault or battery." Def. Code 3 Security & Protection Servs., Inc.'s Mem. of P&A in Opp. to Pl. Cincinnati Specialty Underwriters Insurance Co.'s Mot. for Summ. J. ("Def.'s Opp.") at 8-14. But the law is clear that "the reasonable expectations doctrine is not a mandate for courts to rewrite insurance policies and reallocate their assignment of risks between insurer and insured." *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1132 (D.C. 2001). The policy at issue in this case is clear and unambiguous, and this Court will not disturb that plain language simply because defendant entertained a mistaken belief about the policy's scope of coverage.

### III. Defendant's Counterclaims

Finally, defendant asserts counterclaims for one count of breach of contract and one count of bad faith pursuant to Md. Code Ann., Cts. & Jud. Proc. § 3-1701. *See* Def.'s Answer at ¶¶ 16-28. Because I have concluded that CSU has no duty to defend or indemnify Code 3 under the Assault or Battery Exclusion, both of defendant's counterclaims fail as a matter of law.

First, an insured cannot establish a case for bad faith—or lack of good faith—where the policy at issue does not afford coverage. "Section 3–1701(d)(1)(i) provides that the statutory claim for failure to act in good faith applies to civil actions in which the insured seeks a determination of whether coverage actually exists under an insurance policy, and § 3–1701(e) requires a finding in favor of the insured on that coverage question." *St. Paul Mercury Ins. Co. v. Am Bank Holdings, Inc.*, 819 F.3d 728, 739 (4th Cir. 2016); *see also All Constr., LLC v. Mut. Benefit Ins. Co.*, 3 F. Supp. 3d 409, 416-17, 423 (D. Md.

11

2014). Here, I have already concluded that the plain language of the polices bars coverage for Code 3 for the claims asserted in the underlying lawsuit. Thus, Code 3's claim for bad faith fails as a matter of law.

Second, Code 3 cannot demonstrate that CSU breached any alleged duties under the policies. Although Code 3 asserts in its summary judgment papers that CSU has disclaimed coverage and its duty to defend, *see, e.g.*, Def.'s Opp. at 16, this allegation is contradicted by the record. In fact, Code 3 admits elsewhere in its filings that CSU is, in fact, defending the underlying lawsuit pursuant to a reservation of rights. *See* Def.'s Opp., Ex. 2 at ¶ 22. And CSU's July 16, 2015 letter explicitly states that CSU "agrees to defend Code 3 against the claims and allegations asserted in the above-referenced lawsuit pursuant to a full and complete reservation of rights under the above-referenced policy." Pl.'s Mem., Ex. 15. As such, Code 3's argument on this point is meritless.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion for Summary Judgment is GRANTED. It is DECLARED that CSU owes no duty under the Primary and Excess policies issued to Code 3 to indemnify or to defend Code 3 in the underlying lawsuit. It is further ORDERED that defendant's counterclaims are DISMISSED with prejudice. A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge